■ LEONILDA CHEVALIER, Plaintiff, v 368 E. 148TH STREET ASSOCIATES, LLC, et al., Defendants, and NOTIAS CONSTRUCTION CORP., Respondent. NOTIAS CONSTRUCTION CORP., Third-Party Plaintiff-Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Third-Party Defendant, and TRIBORO PLUMBING & HEATING CORP., Third-Party Defendant-Appellant. [914 NYS2d 130]—

---

2. The majority does not address this point.

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered January 29, 2010, which, upon granting third-party plaintiff Notias Construction's motion to renew, vacated so much of a prior order dismissing its third-party claims for common-law indemnification and contribution against third-party defendant Triboro Plumbing & Heating, and denied Triboro's cross motion for summary judgment dismissing those third-party claims, affirmed, without costs.

Based on the totality of the circumstances, the motion court did not abuse its discretion in vacating its order dismissing the third-party complaint brought by third-party plaintiff Notias against third-party defendant Triboro. The relevant procedural history of the action is as follows: Plaintiff, a nonparty to this appeal, alleges that in May 2006 she slipped and fell on a road covered with mud that came from a nearby construction site. She brought this action against, among others, Notias, the general contractor for the construction project.

In September 2008, Notias commenced a third-party action against Triboro, a subcontractor. By notice dated February 19, 2009, defendant 368 East 148th Street Associates, LLC (368), also a nonparty to this appeal, moved for summary judgment dismissing the complaint and all cross claims against it. By notice dated March 24, 2009, Triboro moved, by cross motion to the 368 motion, for summary judgment dismissing Notias's third-party complaint as against Triboro.* Notias defaulted in opposing the cross motion, and as a result by order entered June 9, 2009, the motion court granted Triboro summary judgment on default and dismissed the third-party complaint.

By notice dated June 10, 2009, Notias moved, among other things, for vacatur of the June 9 order. In an affirmation in support, Notias's then-counsel stated that the default was unintentional and offered the following explanation: in February 2009, counsel received Triboro's "Notice of Cross-Motion," which

---

* Although not raised by the parties, the validity of Triboro's cross motion is questionable because it was untimely pursuant to CPLR 2215, which requires a cross movant to serve papers "[a]t least three days prior to the time at which the motion is noticed to be heard," if not earlier under CPLR 2214 (b). Triboro's papers, which were dated March 24, were not served by March 22 as required by statute.

made the cross motion returnable April 10, 2009. At that time, 368's summary judgment motion was pending; originally the motion was returnable March 25, 2009, but it had been adjourned to April 14, 2009, apparently without Notias's consent. Notias's counsel indicated that he "believed that the [cross motion] had not been accepted by the court" because it was "returnable on Good Friday, and [the 'e-law' website] did not indicate that the [cross motion] was pending before the Court." As a result, counsel stated, he "expected to receive an Amended [cross motion] with a new return date, at which time this office intended to oppose the [cross motion]."

By decision and order dated July 13, 2009, Supreme Court denied the motion to vacate on the ground that the papers were procedurally defective, but granted leave to renew on proper papers. Although the Court noted that Notias had been lax, it stated that it would be willing to entertain the motion to vacate because Notias did not intend to default and "such matters as are raised in these applications are better resolved on the merits."

In October 2009, Notias moved by newly-retained counsel for leave to renew its motion for vacatur. In January 2010, the court granted renewal, and upon renewal vacated its dismissal and reinstated Notias's third-party claims "pursuant to the [long]-standing policy of the Courts to favor adjudication of the merits over default dismissals, and pursuant to an adequate showing herein that there are issues of fact to be resolved at trial as to Triboro's possible responsibility for the injuries sustained by plaintiff."

An application to vacate an order of default may be granted if the movant shows that the default was excusable and that the defense to the action is meritorious (*38 Holding Corp. v City of New York*, 179 AD2d 486, 487 [1992]). It is within the court's sound discretion to determine whether the movant's excuse for the default is sufficient (*id.*; *see also Chelli v Kelly Group, P.C.*, 63 AD3d 632, 633 [2009] [court abused its discretion in denying motion to vacate where defendants' failure to appear "was purely the result of inadvertent law office failure" by their attorneys]; *SS Constantine & Helen's Romanian Orthodox Church of Am. v Z. Zindel, Inc.*, 44 AD3d 744, 745 [2007] [court providently exercised its discretion in determining that excuse was reasonable, where counsel's failure to oppose summary judgment motion was isolated and unintentional with no evidence of willful neglect]). The determination whether a reasonable excuse has been offered is sui generis and should be based on all relevant factors, among which are the length of the delay

chargeable to the movant, whether the opposing party has been prejudiced, whether the default was willful, and the strong public policy favoring the resolution of cases on the merits (*Harcztark v Drive Variety, Inc.*, 21 AD3d 876, 876-877 [2005]).

The excuses that Notias's prior counsel gave are sufficient because any law office failure was inadvertent. Further, the short delay caused by the default, the lack of prejudice to Triboro, the public policy concerns, and Notias's retention of new counsel, also militate in favor of vacating the default.

We find that granting permission to resubmit the motion upon proper papers was also a proper exercise of discretion, and that upon granting renewal, the court properly reinstated the third-party claims for common-law indemnification and contribution as against Triboro (*see* CPLR 2221 [e]).

Finally, as to the merits of the defense, an issue of fact exists as to whether any negligence by Triboro contributed to the accident, and whether Notias could itself be found negligent. As a result, the motion court properly denied Triboro's cross motion to dismiss the indemnification and contribution claims (*see Gallagher v Levien & Co.*, 72 AD3d 407, 409 [2010]; *Hanley v McClier Corp.*, 63 AD3d 453, 455 [2009]). Concur—Tom, J.P., Acosta, Renwick and Freedman, JJ.

McGuire, J., dissents in a memorandum as follows: I dissent and would reverse the order granting Notias's motion to renew and, upon renewal, vacating a prior order dismissing Notias's third-party complaint against Triboro and denying Triboro's cross motion for summary judgment dismissing the third-party complaint as against it. I would not reach the question of whether a proper basis for renewal was established as Notias did not in any event establish a reasonable excuse for its default.

As Notias defaulted with respect to Triboro's cross motion (another defendant in the main action had moved for summary judgment dismissing the complaint against it) to dismiss Notias's third-party complaint as against it, Supreme Court granted the cross motion and dismissed the third-party complaint against Triboro. Thereafter, in moving, inter alia, to vacate the default, Notias was required to establish both a reasonable excuse for its default and that it had potentially meritorious claims against Triboro (*JP Morgan Chase Bank, N.A. v Bruno*, 57 AD3d 362 [2008]). Apparently, but understandably, the majority is unwilling to go so far as to say that the proffered excuse is reasonable and instead says only that the "excuses [*sic*] . . . are sufficient because any law office failure was inadvertent." But the inadvertence of a failure to do something is not sufficient to make the failure reasonable. If

law office failure constitutes a reasonable excuse whenever it is inadvertent, virtually all law office failures will pass muster. By setting the bar too low, the majority invites rather than discourages lax practice. Moreover, the majority is wrong for another reason: in opposing Notias's motion to vacate the default, Triboro blew Notias's excuse to smithereens with a factual assertion that Notias made no attempt to deny in its reply submission.

Supreme Court granted Triboro's cross motion by a decision and order dated June 3, 2009, almost two months after the original return date of the motion. The following constitutes the excuse offered by Notias's attorney: "As the 'Cross-Motion' received by this office was returnable on Good Friday, and as E-Law did not indicate that the Motion was pending before the Court, your affirmant believed that the Motion had not been accepted by the Court, and expected an Amended Notice of Cross Motion with a new return date." As this belief is unreasonable, the "excuse" is, too. Good Friday is not, of course, a legal holiday and Notias has never attempted to explain the relevance of this apparent makeweight. The critical facts are that Notias was served with the cross motion and never contacted opposing counsel. Other than check E-Law at some unspecified date, Notias did nothing. It is manifestly irresponsible for an attorney to do nothing after being served with a motion simply because the motion does not show up on E-Law. At best, this was the kind of "sloppy practice" the Court of Appeals decried in *Brill v City of New York* (2 NY3d 648, 653 [2004]). Of course, trial courts have some discretion in determining whether an excuse is reasonable and their determinations should not be made in a vacuum. Nonetheless, some "excuses" just will not do (*see Okun v Tanners*, 11 NY3d 762 [2008]).

Nor did Supreme Court ever pronounce this excuse a reasonable one. To the contrary, in its July 13, 2009 decision and order Supreme Court had this to say about Notias's excuse: "it remains unclear . . . how Notias could properly wait, uncurious, as eight weeks passed from the initial return date of the cross motion, which Notias should have suspected was being rescheduled. As Triboro points out, no inquiries were made to it by Notias." Like the majority, Supreme Court overlooked the default because of the public policy in favor of resolving disputes on the merits. This public policy does not negate the requirement of a "reasonable excuse." Although it should encourage courts to be forgiving when deciding whether an excuse is reasonable, it does not justify setting the bar so low as to countenance torpor.

In any event, Notias's claimed excuse was blown apart by the affirmation submitted by Triboro's attorney in opposition to Notias's motion to vacate the default. Counsel averred as follows: "Although [Triboro] initially noticed its cross motion for April 10, 2009, it subsequently sent a second notice indicating that the cross motion was returnable on April 14, 2009 . . . . This Court also received that second notice, along with the affidavit indicating that it had been served on Notias' counsel."

Obviously, if Notias received such a second notice, it would have no excuse at all. Although one of Notias' attorneys submitted a reply affirmation, it did not deny Triboro's assertion that it had sent a second notice. Nor did it deny Triboro's assertion that the court had received the second notice and an affidavit of service. Rather, Notias simply ignored these assertions. Under these circumstances, Notias should be deemed to have admitted these factual assertions (*SportsChannel Assoc. v Sterling Mets, L.P.*, 25 AD3d 314, 315 [2006]). Although the majority apparently disagrees, it provides nothing by way of an explanation of why Notias should not be deemed to have admitted the assertions. In its brief, Notias asserts that its predecessor counsel "claimed that his office never received Triboro's amended notice of cross motion and consequently never learned of the new return date for the motion." In fact, however, predecessor counsel never made any such claim.[*]

Although Supreme Court noted Triboro's assertion in its opposition that Notias had been served with a second notice, it concluded that the assertion was "not determinative" because Triboro had not also provided a copy of the affidavit of service of the second notice. I think the opposite conclusion is the only reasonable one. As Notias did nothing to deny an assertion it easily could deny, its failure to do anything should not be excused on the ground that Triboro could have done even more. Moreover, although Notias bore the burden of establishing a reasonable excuse, Supreme Court's reasoning effectively put the burden on Triboro to negate the excuse. In this regard, I

---

[*] In a footnote, the majority states that "the validity of Triboro's cross motion is questionable because it was untimely pursuant to CPLR 2215, which requires a cross movant to serve papers '[a]t least three days prior to the time at which the motion is noticed to be heard.' " What is questionable, however, is whether Triboro's motion is a "cross" motion to which CPLR 2215 is applicable. Although denominated as a "cross" motion by Triboro, the motion was made returnable on April 10, 2009, not on March 25th, the day 368 E. 148th Street Associate's motion was noticed to be heard, and it did not request any relief against the original movant, 368 E. 148th Street Associates. As is evident, Notias had ample time to respond. Why the majority raises this issue of form when Notias does not is unclear.

note that Supreme Court did not purport to contradict Triboro's assertion that the court had received an affidavit of service of the second notice.

The majority does not dispute that if Notias received the second notice it would have no excuse at all. Nor does it take issue with me on any of the other points I make in the prior paragraph. Unfortunately for the rule of law, the majority ignores all these points.